# IN THE COURT OF APPEALS OF IOWA

No. 23-0646
Filed April 10, 2024

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**DIONTAY MARCUS COBBS,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, David P. Odekirk, Judge.

Diontay Cobbs appeals following his convictions for first-degree robbery and using a juvenile to commit an indictable offense. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Ashley Stewart, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Joseph D. Ferrentino, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and Greer and Chicchelly, JJ.

**BOWER, Chief Judge.**

Diontay Cobbs appeals following his convictions for first-degree robbery and using a juvenile to commit an indictable offense. Upon our review, we affirm.

## I. Background Facts and Proceedings

The State charged Cobbs with first-degree robbery and using a juvenile to commit an indictable offense following an incident during which he robbed a Waterloo convenience store at gunpoint while in the company of several juveniles. Cobbs entered a plea of not guilty. After a four-day trial, the jury returned a guilty verdict on both counts. The district court sentenced Cobbs to terms of imprisonment of twenty-five years for first-degree robbery, with a seventy-percent mandatory minimum, and ten years for using a juvenile to commit an indictable offense. The court ordered the sentences to run consecutively.

Cobbs appeals, challenging the sufficiency of the evidence supporting his conviction for using a juvenile to commit an indictable offense. Cobbs also claims the district court abused its discretion by sentencing him to a seventy-percent mandatory minimum and consecutive sentences. Additional facts will be set forth below as relevant to Cobbs's claims on appeal.

## II. Sufficiency of the Evidence

The jury was instructed the State had to prove the following elements of using a juvenile to commit an indictable offense:

> 1. That on or about September 29, 2020, the defendant acted with, or entered into a common scheme or plan with, or conspired with, or recruited or used;
> 2. A person under age 18, namely S.W.;
> 3. Through threats or monetary payment or other means;
> 4. To commit a robbery; and,
> 5. For the profit of the defendant.

*See* Iowa Code § 709A.6 (2020). Cobbs concedes the second, fourth, and fifth elements but challenges the first and third elements.

We review the sufficiency of the evidence for correction of errors at law. *See State v. Lacey*, 968 N.W.2d 792, 800 (Iowa 2021). "Under this standard, the court is highly deferential to the jury's verdict. We will affirm the jury's verdict when the verdict is supported by substantial evidence." *Id.* Evidence is substantial if it may convince a rational person of the defendant's guilt beyond a reasonable doubt. *Id.* In making this determination, we view the evidence and all reasonable inferences that can be drawn from it in the light most favorable to the State. *Id.* The question is whether the evidence supports the finding the jury made, not whether it would support a different finding. *Id.*

At trial, S.W. testified she was fourteen years old at the time of the robbery and had met Cobbs, who was twenty-six, "through a few other mutual friends." On the evening of September 28, 2020, S.W. asked Cobbs to "come pick [her] up" to "chill." S.W. also rounded up her cousin and a friend "to come out" with them. The foursome drove "around for a little while around Davenport" in the early morning hours, "and then [they] proceeded to get on the highway to go to Waterloo." According to S.W., they had "really nothing planned" in Waterloo, but she mentioned she "knew some people" there. S.W. "asked to drive" Cobbs's car, which Cobbs allowed, and Cobbs sat in the front passenger seat.

In Waterloo, they stopped by a friend's house and then "proceeded to go to" a convenience store, Ali's Corner. Surveillance footage shows Cobbs's car arrived at Ali's Corner at 9:15 a.m., then "it actually left but then completed a U-

turn and returned." S.W. testified they "were supposed to be going to the store just to get some Backwoods [cigars] and a bottle of liquor." Cobbs "told [her] to pull up to the store, so [she] pulled up there." "Eventually [Cobbs] got out of the front passenger seat" and went inside. He "took [his gun] with him inside the store."

Cobbs approached the counter, robbed the clerk at gunpoint, and returned to the car with a bag containing "the Backwoods and the bottles of liquor, [and] there was a lot of money at the bottom of the bag." S.W. testified Cobbs "didn't say nothing beforehand" about robbing the convenience store, but when he returned to the car with the bag "that's when [she] put two and two together; basically knew what happened." She was "kinda upset, asking questions," and Cobbs "was just like, calm down, calm down, we cool." S.W. then drove Cobbs's car to a nearby Kwik Star to "get gas to go back to Davenport." On the drive back, Cobbs gave S.W. some money, which she used to buy a dog and "personal hygiene things." Cobbs also gave S.W. a bottle of liquor and some marijuana.

On appeal, Cobbs claims "S.W. was not an active participant" in the robbery. Specifically, he argues the evidence did not support a finding he "used threats to recruit or use S.W. to participate in the robbery"; rather, "S.W. made an independent decision to be with Cobbs and to travel from Davenport to Waterloo and beyond." Cobbs further claims the evidence did not support a finding he "used money to induce S.W.'s participation in a robbery" and "[t]here was no evidence that S.W. drove to the liquor store because she was promised alcohol"; rather "S.W. decided to drive around Waterloo because she wanted to do so."

Viewing the evidence in the light most favorable to the State, we conclude the record evidence could convince a rational fact finder, beyond a reasonable

doubt, Cobbs used S.W. to commit a robbery through monetary payment or other means. Specifically, Cobbs allowed S.W., who did not have a license, to drive his car to Waterloo, and by doing so, Cobbs used S.W. as the driver of his vehicle to commit the robbery. *See, e.g.*, *State v. Morris*, No. 10-0376, 2011 WL 648285, at *4 (Iowa Ct. App. Feb. 23, 2011) (affirming the defendant's conviction for using a juvenile to commit an indictable offense where the juvenile lacked knowledge or cooperation in the crime, finding a juvenile "can be used by another to accomplish a specific purpose without being made aware that she is being used"). Cobbs directed S.W. to stop at Ali's Corner for liquor and cigars, which S.W. was not able to purchase for herself, and told her where to park. *See id.* ("There is no language in this element that requires the juvenile to have knowledge of the defendant's intent or be in agreement with the defendant's plan."). Cobbs also gave S.W. money, liquor, and marijuana after the robbery. *See, e.g., State v. Wagner*, No. 01-1232, 2002 WL 1758180, at *4 (Iowa Ct. App. July 31, 2002) ("Although Wagner testified he did not make any statements to D.B concerning breaking into any trucks at On–Time Delivery, and he did not suggest taking any property from the trucks and splitting it between them, it is clear from the verdict that the jury found D.B.'s testimony to be more credible than Wagner's. The jury is free to reject certain evidence, and credit other evidence.").

Upon our review, we conclude there is substantial evidence in the record to support the jury's verdict on the crime of using a juvenile to commit an indictable offense. We affirm on this issue.

### III. Sentencing

Cobbs also challenges his sentence. Prior to imposing Cobbs's sentence, the district court considered relevant factors, including his age, employment circumstances, family circumstances, prior record, the presentence investigation report (PSI), the parties' statements to the court, and the nature of the offenses. The court further stated:

> Having considered all those matters, the court does now pronounce sentence which the court believes will provide the maximum opportunity for rehabilitation of the defendant and provide maximum protection of the community from further offenses by the defendant and others. In considering then the sentencing options available, on count I the court sentences the defendant to a term of imprisonment not to exceed [twenty-five] years.
>
> In determining the amount of time to be served as a mandatory minimum sentence in this case, the court is aware, again, that it has discretion to sentence the defendant between [fifty] percent and [seventy] percent of the maximum term as the mandatory minimum. In this case the court determines that [seventy] percent is the appropriate amount of the mandatory minimum in this case, which would be seventeen and a half years. The court looks in part, again, at the nature of this offense, the brazenness of this crime being committed in broad daylight with use of a gun with other members of the public present, not to mention the minors who were present before and after the commission of the offense.
>    . . . .
> Counts I and II will run consecutive to one another. And, again, the reason for this the court finds is, again, based on the brazen nature of this offense, the use of the minors, in addition to just committing the robbery.

On appeal, Cobbs claims the district court abused its discretion by sentencing him to a seventy-percent mandatory minimum for first-degree robbery and imposing consecutive sentences, while "failing to consider that [he] did not have a criminal record," which shows he "was not likely to be a repeat offender and could have been rehabilitated with a lesser sentence."

We review sentences within statutory limits for an abuse of discretion. *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). We will not find an abuse unless we discern that the sentencing court exercised its discretion on grounds "or for reasons that were clearly untenable or unreasonable." *Id.* In applying this standard, "it is important to consider the societal goals of sentencing criminal offenders, which focus on rehabilitation of the offender and the protection of the community from further offenses." *Id.*; *accord* Iowa Code § 901.5.

While the court must "consider all the circumstances of a particular case . . . , it is [not] required to specifically acknowledge each claim of mitigation urged by a defendant." *State v. Boltz*, 542 N.W.2d 9, 11 (Iowa Ct. App. 1995) (internal citation omitted). Indeed, "the failure to acknowledge a particular sentencing circumstance does not necessarily mean it was not considered." *Id.* Rather, we review "the entire record, and look to see if the reasons articulated by the trial court are sufficient to enable us to determine if an abuse of discretion occurred." *Id.* Here, in addition to the information in the PSI, the court heard from defense counsel that Cobbs "didn't have any criminal history whatsoever up to the age of twenty-five," "[s]o this isn't a person where you see him committing crimes." Ultimately, in reaching its decision, the court was not persuaded by Cobbs's requests for a fifty-percent mandatory minimum or concurrent sentences. On our review, we find the district court did not abuse its discretion "on grounds or for reasons that were clearly untenable or unreasonable" in imposing Cobbs's sentence. *Formaro*, 638 N.W.2d at 724. We therefore affirm.

**AFFIRMED.**